**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE FREECYCLE NETWORK, INC.,
            *Plaintiff-Appellee,*

v.

TIM OEY; JANE DOE OEY,
            *Defendants-Appellants.*

No. 06-16219

D.C. No.
CV-06-00173-RCC

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
August 15, 2007—San Francisco, California

Filed September 26, 2007

Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Hawkins

**COUNSEL**

Donald M. Falk, Mayer, Brown, Rowe & Maw LLP, Palo Alto, California, for the appellants.

Paul J. Andre, Perkins Coie LLP, Menlo Park, California, for the appellee.

Bruce Adelstein, The Law Offices of Bruce Adelstein, Los Angeles, California, David Post, I. Herman Stern Professor, James E. Beasley School of Law, Philadelphia, Pennsylvania, for Amici James Boyle, Lauren Gelman, Lawrence Lessig, Declan McCullagh, David Post, Glenn Harlan Reynolds, Martin Schwimmer, Jimmy Wales, and Jonathan Zittrain, in support of the appellants.

Mark A. Lemley, William H. Neukom Professor, Stanford Law School, Palo Alto, California, for Amici 38 Intellectual Property Law Professors and the Electronic Frontier Foundation, in support of the appellants.

## OPINION

HAWKINS, Circuit Judge:

Tim Oey ("Oey") appeals a preliminary injunction preventing him "from making any comments that could be construed as to disparage upon [The Freecycle Network]'s possible trademark and logo" and requiring that he "remove all postings from the [I]nternet and any other public forums that he has previously made that disparage [The Freecycle Network]'s possible trademark and logo."[1] *The Freecycle Network, Inc. v. Oey*, No. CV 06-173, Order at 5 (May 11, 2006) (emphasis added). We have jurisdiction under 28 U.S.C. § 1291 and, for the following reasons, vacate the injunction and remand.

### I.

The Freecycle Network ("TFN") is a nonprofit Arizona corporation "dedicated to encouraging and coordinating the reusing, recycling, and gifting of goods." Through its website, http://www.freecycle.org, TFN coordinates the efforts of over 3,700 Freecycle groups worldwide. Via the local groups' webpages, individuals can post goods they no longer want. If another member wants the item offered, an exchange is arranged between the parties and the item thus avoids the landfill.

---

[1] Although Oey's wife remains a party to this case, the facts and legal questions revolve solely around Oey and, accordingly, this opinion refers only to him.

Although TFN claims to have consistently used the marks FREECYCLE and THE FREECYCLE NETWORK, and "The Freecycle Network" logo since May 2003 to refer to TFN, it also admits that it initially used the term "freecycle" and its various derivations (e.g., freecycling, freecycler) to refer more generally to the act of recycling goods for free via the Internet. In 2004, based on the advice of then-member Oey, TFN decided to more actively police its use of the term "freecycle" and to formally pursue trademark protection for it, filing a trademark registration application on August 27, 2004. Shortly thereafter, TFN instituted a strict usage policy, drafted by Oey, preventing use of the term "freecycle" in any sense other than to refer to TFN or TFN's services. On January 17, 2006, TFN's proposed mark was published for opposition in the Official Gazette. An opposition was filed the next day and the mark currently remains unregistered.[2]

A member of TFN since February 2004 and active in the corporation's early development, Oey initially supported TFN's claim to the FREECYCLE mark. Experiencing a change of heart and convinced that the term should remain in the public domain, Oey later urged TFN to abandon its efforts to secure the mark, conveying his feelings in an August 8, 2005, email to fellow TFN group moderators.[3] In the following weeks, Oey made various statements on the Internet that

---

[2]Opposition proceedings before the Trademark Trial and Appeal Board have been stayed pending resolution of a challenge to TFN's trademarks currently pending in the Northern District of California. In *FreecycleSunnyvale v. The Freecycle Network*, No. 06-00324CW (N.D. Cal.), FreecycleSunnyvale (an independent "free recycling" group started by Oey) seeks a declaration that its use of the term "freecycle" does not infringe on TFN's mark, or, in the alternative, that "freecycle" is a generic term.

[3]In this email, Oey urged abandonment of TFN's trademark pursuit, contending that forcing the term "freecycle" into the public domain "fits well with a 'viral' marketing approach to freecycle . . . which will lead back to [TFN] . . . [and] generate lots of goodwill." He also recommended that TFN "maintain the trademark on the full name 'The Freecycle Network' . . . [and] take credit for birthing [the] freecycle [concept]."

TFN lacked trademark rights in "freecycle" because it was a generic term, and he encouraged others to use the term in its generic sense and to write letters to the United States Patent and Trademark Office ("PTO") opposing TFN's pending registration.

Not surprisingly, TFN took issue with Oey's views and, on September 16, 2005, asked him to sever ties with the company. In the ensuing months, Oey continued to make statements on the Internet challenging the validity of TFN's claimed trademark in the term "freecycle" and encouraging others to use the term in its generic sense.

In April 2006, TFN sued Oey, seeking an injunction and damages, alleging that Oey's statements constituted contributory trademark infringement and trademark disparagement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as injurious falsehood, defamation, and intentional interference with a business relationship under Arizona law. The district court granted a preliminary injunction based solely on TFN's § 1125(a) claims, apparently conflating TFN's allegations of contributory trademark infringement and trademark disparagement. Oey timely appealed, and, on July 20, 2006, we stayed the district court's injunction pending the outcome of this appeal.

## II.

We review a district court's grant of a preliminary injunction for an abuse of discretion. *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 713 (9th Cir. 2007). A district court abuses its discretion in granting an injunction if its decision is based on "either an erroneous legal standard or clearly erroneous factual findings." *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003) (internal quotations and citations omitted). "A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the

issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation." *Id.*

We have established two sets of criteria for evaluating a request for a preliminary injunction. *Earth Island Inst. v. United States Forest Serv.*, 351 F.3d 1291, 1297 (9th Cir. 2003).

> Under the "traditional" criteria, a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.

*Id.* at 1297-98 (internal quotations and citations omitted). Thus, under either criteria, where a plaintiff fails to even raise serious questions about its likelihood of success, an injunction may not issue.

## III.

Although the district court correctly identified the "traditional" criteria for granting a preliminary injunction, it issued the injunction based solely on TFN's Lanham Act claims of trademark infringement and trademark disparagement. As we detail below, the district court's "likelihood of success" analysis did not adequately analyze the necessary elements for trademark infringement, *see Clear Channel Outdoor, Inc.*, 340 F.3d at 813, and the district court "misapprehended the law" insofar as the Lanham Act contains no cause of action for trademark disparagement.

## A)  Trademark Infringement

**[1]** The district court's order characterized TFN's § 1125(a) claims as allegations of "trademark infringement."[4] To be liable for trademark infringement under § 1125(a), a person must (1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services. 15 U.S.C. § 1125(a). "The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (internal quotations omitted). We have identified eight nonexclusive factors relevant to evaluating likelihood of confusion. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).[5] In its order, the district court did not mention, let alone analyze, these critical factors in evaluating TFN's likelihood of success on its trademark infringement claim. Rather, the district court simply concluded that: (1) TFN appears to have a legitimate mark; (2) Oey at one time acknowledged TFN's

---

[4]The district court makes no reference to TFN's *contributory* trademark infringement claim. Likewise, TFN's brief on appeal references only direct infringement, unfair competition, and disparagement. Regardless, as discussed below, neither Oey's actions, nor those he encouraged others to take are actionable under the Lanham Act, making it unlikely TFN would succeed on a contributory infringement claim either. There is nothing in the record suggesting that Oey intentionally induced others to infringe upon TFN's claimed mark or that third parties actually used the mark in an infringing manner. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). Rather, based on this record, Oey simply encouraged the use of the claimed mark in its generic sense.

[5]The so-called *Sleekcraft* factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.*

mark and sought to protect it; and (3) "after his separation from the organization, [Oey] began to publicly encourage the disparagement of the Freecycle trademark." Contrary to the district court's conclusion, these facts—even if true[6]—simply do not demonstrate that TFN has a likelihood of success on its § 1125(a) infringement claim.

As a threshold matter, Oey's actions likely did not constitute a "use in commerce," 15 U.S.C. § 1125(a)(1), as the record in this case does not indicate they were made to promote any competing service or reap any commercial benefit whatsoever. *See* 15 U.S.C. § 1127 (defining "use in commerce"); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) ("[Trademark law's 'use in commerce'] refers to a use of a famous and distinctive mark to sell goods [or services] other than those produced or authorized by the mark's owner."). Rather, based on his view that the term was generic, Oey simply expressed an opinion that TFN lacked trademark rights in the term "freecycle" and encouraged like-minded individuals to continue to use the term in its generic sense and to inform the PTO of their opinions.[7]

Furthermore, even if Oey's statements could somehow be construed to be a "use in commerce," such use was not likely to cause confusion, mistake, or deceive anyone as to the connection of Oey's services (or any other) with TFN. *Id.* § 1125(a)(1)(A). Although the district court did not examine the relevant *Sleekcraft* factors, our review of the record identifies no potential likelihood of confusion resulting from Oey's activities. Oey simply did not use TFN's claimed mark or a similar mark in any manner likely to confuse the relevant public: his statements neither mention any competing service or product, nor claim any affiliation with TFN.

---

[6]We express no opinion regarding the validity of TFN's claimed mark.

[7]Likewise, nothing in the record suggests Oey encouraged others to use the mark in commerce.

Finally, Oey's statements also do not satisfy the requirements for false advertising, misrepresentation, or unfair competition under § 1125(a)(1)(B). There is no evidence that Oey's statements were made in "commercial advertising or promotion." *Id.* § 1125(a)(1)(B). And, even if such evidence existed, § 1125(a)(1)(B) creates liability only for *product* disparagement—i.e., misrepresentation of "the nature, characteristics, qualities, or geographic origin" of "another person's *goods, services, or commercial activities.*" *Id.* (emphasis added). TFN does not allege or show that Oey made any statements disparaging its goods or services.[8] To the contrary, many of Oey's remarks appear aimed at ensuring the ongoing success of TFN and its services.[9]

**[2]** Because the district court did not adequately analyze the relevant law in evaluating TFN's likelihood of success on its trademark infringement claim, and the facts alleged do not demonstrate such a likelihood, the district court abused its discretion in granting a preliminary injunction based on this claim.

## B) Trademark Disparagement

**[3]** TFN's complaint also alleged "trademark disparagement" under § 1125(a).[10] However, no such claim exists under

---

[8]While perhaps relevant to an analysis of the mark's validity, TFN's novel argument that disparaging its mark constitutes disparagement of its service because its mark is largely synonymous with its service is irrelevant here. Oey simply did not misrepresent "the nature, characteristics, qualities, or geographic origin" of TFN's services. *See id.*

[9]Oey's statements included: (1) "Let everyone know that TFN does not need to control freecycling for TFN to be successful."; (2)"[Keeping the term 'freecycle' in the public domain] fits well with a 'viral' marketing approach to freecycle. People hear about it and want to know where it came from — which will lead back to [TFN] without strong trademark enforcement. It will also generate lots of goodwill."; and (3) "My alternative also has consequences but I firmly believe it is a much better choice for [TFN] in the long run."

[10]The district court did not address this claim individually, but did seemingly conflate it with TFN's trademark infringement claim, concluding that Oey's alleged disparagement of TFN's mark somehow enhanced TFN's likelihood of success on its infringement claim.

the Lanham Act.[11] The "elements" of TFN's "trademark disparagement" claim, as set forth in its complaint—i.e., false statement, with malice, about TFN's operations and the validity of its mark—simply cannot be gleaned from § 1125(a)'s text or its prohibition against unfair competition, but instead seem to have been derived largely from a common law "slander of title" claim. *See Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1373-74 (10th Cir. 1977) (comparing "trademark disparagement" claim to Colorado's "slander of title," which requires a false statement, malice, and special damages). That the Lanham Act's text does not contemplate a trademark disparagement claim is borne out by the absolute dearth of precedent analyzing such a claim under the Act.[12]

Even assuming TFN's trademark disparagement claim were somehow cognizable under the Lanham Act, the district court made no attempt to determine whether TFN would likely succeed on the merits and, in any event, Oey's conduct does not satisfy TFN's asserted elements. Oey's statements were not "false." At worst, Oey offered an erroneous legal opinion (by a layperson) that TFN lacked trademark rights in the term "freecycle." "Statements of opinion are not generally actionable under the Lanham Act." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

---

[11]As discussed above, § 1125(a)(1)(B) does prohibit *product* disparagement, but Oey's actions did not satisfy the requisite elements. TFN did not raise a dilution by blurring or tarnishment claim under § 1125(c).

[12]TFN's reliance on *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001) (declining to dismiss a complaint alleging, inter alia, trademark disparagement under § 1125(a)), is misplaced. There, the district court simply concluded that Perfect 10's *infringement* claims were sufficiently specific to withstand a vagueness challenge at the pleading stage. *See id.* at 1122. Furthermore, contrary to TFN's claims, *Echo Drain v. Newsted* also offers no assistance because there the district court simply recited the plaintiffs' various allegations, including a claim of "trademark disparagement," but offered no further analysis as to whether the claims were in fact cognizable under the Lanham Act. *See* 307 F. Supp. 2d 1116, 1118 (C.D. Cal. 2003).

To this day, there has been no formal determination that TFN has trademark rights in the term "freecycle." The mark is not yet registered and both an opposition to registration and action seeking a declaration that TFN lacks trademark rights in the term are currently pending. Oey's statement that TFN lacked trademark rights in the term therefore cannot be considered a false statement of fact. *Cf. id.* ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."). TFN and the district court emphasize Oey's prior support of TFN's efforts to trademark the term, but these prior efforts do not render his subsequent statements "false." Oey is entitled to change his mind. Until it is definitively established that TFN holds a trademark in the term "freecycle," it cannot be false to contend that it does not.[13]

**[4]** Trademark disparagement is not a valid cause of action under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and, even if it were, Oey's actions do not satisfy the elements alleged by TFN because he made no false statements. Accordingly, to the extent the district court relied on this alternative claim in granting TFN an injunction, it abused the discretion.

## C)    Genericide

**[5]** Although we do not reach the question of the validity of TFN's claimed mark, the crux of TFN's complaint is that Oey should be prevented from using (or encouraging the use of) TFN's claimed mark FREECYCLE in its generic sense. However, TFN's asserted mark—like all marks—is always at risk of becoming generic and thereby losing its ability to identify the trademark holder's goods or services. *See, e.g.*, *Mat-*

---

[13]Even if TFN unambiguously obtains trademark rights (e.g., by registration or judicial decree), Oey would remain free to argue that TFN should not have been granted the trademark or that the public would be better served with the mark in the public domain.

*tel, Inc.*, 296 F.3d at 900 ("Some trademarks enter our public discourse and become an integral part of our vocabulary."); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:1 (2007) (hereinafter "MCCARTHY"). Where the majority of the relevant public appropriates a trademark term as the name of a product (or service), the mark is a victim of "genericide" and trademark rights generally cease. MCCARTHY § 12:1.

**[6]** Such genericide can occur "as a result of a trademark owner's failure to police the mark, resulting in widespread usage by competitors leading to a perception of genericness among the public, who sees many sellers using the same term." *Id.* (footnotes omitted). Alternatively, "a term intended by the seller to be a trademark for a new product [can be] taken by the public as a generic name because customers have no other word to use to name this new thing." *Id.* Genericide has spelled the end for countless formerly trademarked terms, including "aspirin," "escalator," "brassiere," and "cellophane." *See id.* § 12:18 (list of terms held to be generic).

"Although there is a social cost when a mark becomes generic—the trademark owner has to invest in a new trademark to identify his brand—there is also a social benefit, namely the addition to ordinary language." *Ty Inc. v. Perryman*, 306 F.3d 509, 514 (7th Cir. 2002). Furthermore, when a trademark becomes generic, "it reduces the cost of communication by making it cheaper for competitors to inform consumers that they are selling the same kind of product" or providing the same kind of service. MCCARTHY § 12:2; *see also Mattel, Inc.*, 296 F.3d at 900 ("Trademarks often fill in gaps in our vocabulary and add a contemporary flavor to our expressions. Once imbued with such expressive value, the trademark becomes a word in our language and assumes a role outside the bounds of trademark law.").

**[7]** Of course, trademark owners are free (and perhaps wise) to take action to prevent their marks from becoming

generic and entering the public domain—e.g., through a public relations campaign or active policing of the mark's use. The Lanham Act itself, however, contains no provision preventing the use of a trademarked term in its generic sense.[14] *Cf. Ty Inc.*, 306 F.3d at 513-14 (rejecting an attempt to extend the Lanham Act's antidilution provisions "to enjoin uses of their mark that, while not confusing, threaten to render the mark generic").

**[8]** Nor does the Act prevent an individual from expressing an opinion that a mark should be considered generic or from encouraging others to use the mark in its generic sense. Rather, the use of a mark in its generic sense is actionable under the Lanham Act only when such use also satisfies the elements of a specified cause of action—e.g., infringement, false designation of origin, false advertising, or dilution. TFN's mere disagreement with Oey's opinion and frustration with his activities cannot render Oey liable under the Lanham Act.

## IV.

Based on the record before us, our analysis of the necessary elements and relevant considerations under § 1125(a) indicates that Oey's actions likely did not constitute infringement because they were not a "use in commerce," created no likelihood of confusion, and did not disparage TFN's products or services.

To the extent the injunction was based on TFN's "trademark disparagement" claim under section 43(a) of the Lan-

---

[14]Although generic use (or encouraging generic use) alone does not violate the Lanham Act, we express no opinion as to whether such actions may be cognizable pursuant to alternative theories of relief under state or federal law. The district court's preliminary injunction was based solely on TFN's claims under section 43(a) of the Lanham Act, and we therefore need not—and do not—address TFN's other potential causes of action.

ham Act, the district court abused its discretion because no such cause of action exists under the Act. Furthermore, even if the claim were somehow cognizable under § 1125(a), TFN has not demonstrated any likelihood of success because the record does not demonstrate that Oey made any false statement.[15]

[9] Because TFN's Lanham Act claims provided the sole basis for the district court's order granting a preliminary injunction, we **VACATE** the injunction and **REMAND** for further proceedings consistent with this opinion.[16]

---

[15]Because we conclude TFN failed to demonstrate any likelihood of success or raise any serious questions, we need not address whether TFN can meet the additional prerequisites for obtaining a preliminary injunction.

[16]Because we vacate the injunction on other grounds, we express no opinion on the First Amendment challenges raised by Oey and amici. Nor do we express any opinion on whether an injunction is appropriate pursuant to any of TFN's state law claims. We leave it to the district court to determine its jurisdiction over—and, if necessary, the relative merits of—those claims.