**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARLYN NUTRACEUTICALS, INC.,
*Plaintiff-Appellant,*

v.

MUCOS PHARMA GMBH & CO.,
*Defendant-Appellee.*

No. 08-15101

D.C. No.
CV-07-00012-ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed July 2, 2009

Before: J. Clifford Wallace, Sidney R. Thomas, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Sidney R. Thomas

## COUNSEL

Maria Salapska, Law Offices of Maria Salapska, PLLC, Phoenix, Arizona; Paul M. Levine, McCarthy Holthus Levine, Phoenix, Arizona; Paul F. Eckstein and Karin S. Aldama, Perkins Coie Brown & Bain, PA, Phoenix, Arizona, for the appellant.

Paul F. Donahue, K&L Gates LLP, Chicago, Illinois; Jason M. Marks, Bell, Boyd & Lloyd LLP, Chicago, Illinois; Debra A. Winiarski, Phoenix, Arizona, for the appellee.

## OPINION

THOMAS, Circuit Judge:

This appeal presents the question, among others, as to the appropriate criteria that a district court should apply in

considering a motion to enter a preliminary injunction requiring a product recall in a trademark infringement case. We join the Third Circuit in requiring that a district court must find a substantial risk of danger to the public or other special circumstances in order to enter an interlocutory order recalling a product in a trademark infringement case.

I

This case involves a dispute between two nutraceutical companies concerning the enzyme-based dietary supplement Wobenzym, originally produced and sold by the German corporation Mucos Pharma GmbH & Co. ("Mucos"). Dr. Karl Ransberger developed Wobenzym and owned Mucos until his death in 2001. Wobenzym is federally trademarked.[1] In the late 1980s, Ransberger met Joachim Lehmann, today the CEO of Marlyn Nutraceuticals, Inc. ("Marlyn"). Ransberger acquired a 50% ownership interest in Marlyn in exchange for allowing Marlyn to exclusively distribute Wobenzym in the United States. From 1991 to 2006, Marlyn distributed Wobenzym in the United States for Mucos. Marlyn sold Wobenzym in labels that prominently displayed Mucos's trademark. Mucos sold over $25 million of Wobenzym to American customers.

When Ransberger died in 2001, problems arose between Mucos and Marlyn. Mucos and Marlyn resolved these problems in a 2002 Settlement Agreement. Section 13 of the Settlement Agreement contained the terms of a distributorship arrangement ("Distributorship Provision"). The Distributorship Provision provided that "[w]ithin 30 days after the Effective Date, MUCOS and Marlyn shall use their good faith

---

[1]Mucos developed two distinct products: WOBENZYM® and WOBENZYM®N. It developed WOBENZYM® in the 1960s and WOBENZYM®N in 1991. WOBENZYM® was a formulation of seven enzymes; WOBENZYM®N contained five enzymes. This opinion refers to WOBENZYM®N as simply "Wobenzym."

efforts to enter into a formal distributorship agreement containing the following terms and such other terms as may be mutually agreed to or are customary in the industry." No such formal agreement was ever executed.

The Distributorship Provision provided that, under the future distributorship agreement, Marlyn was to be the exclusive distributor of Wobenzym and two other supplements in the United States for a period of ten years, with a five-year extension option. The Distributorship Provision stated that if Mucos ceased production of Wobenzym, Marlyn would have "an exclusive . . . non-transferable, non-sublicensable license . . . to manufacture [Wobenzym] within the United States" and sell the Wobenzym it manufactures.

In 2006, Marlyn submitted purchase orders to Mucos but refused to take delivery because it believed that Mucos had changed the product. Marlyn had requested and received a batch weighing sheet from Mucos which revealed a difference between the actual amount of certain active ingredients and the amount listed on Wobenzym's product label.

Marlyn construed the discrepancy between the actual amounts of the ingredients and the stated amounts as indication that Mucos had ceased producing Wobenzym. Marlyn believed that, according to the Distributorship Provision, it had the right to begin manufacturing Wobenzym and selling it under the Wobenzym label. In March of 2007 it began doing just that. Mucos claims that Marlyn's Wobenzym formula differed from Mucos's formula, causing confusion and infringing on Mucos's trademark.

Mucos brought this action for trademark infringement and requested a preliminary injunction to stop Marlyn from selling Wobenzym with the Wobernzym mark. The district court heard testimony from Marlyn's and Mucos's experts as well as their executive officers.

On November 13, 2007, the district court granted Mucos's motion for a preliminary injunction. It ordered Marlyn to stop selling Wobenzym, recall the Wobenzym that it had already sold, and provide restitution to those customers who had bought Marlyn's Wobenzym.

On November 16, three days after the district court issued the preliminary injunction and seven days after the hearing ended, Marlyn moved to introduce three new pieces of evidence and requested that the court reconsider its decision. The district court declined to admit the evidence or reconsider its decision.

Marlyn appeals the preliminary injunction, the scope of the injunction, and the court's decision not to reconsider its decision in light of new evidence.

## II

We review a district court's grant of a preliminary injunction for an abuse of discretion. *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 901 (9th Cir. 2007). "[O]ur inquiry is at an end once we determine that the district court employed the appropriate legal standards which govern the issuance of a preliminary injunction, and . . . correctly apprehended the law with respect to the underlying issues in litigation." *Harris v. Bd. of Supervisors*, 366 F.3d 754, 760 (9th Cir. 2004) (internal quotation marks omitted). We review the scope of a preliminary injunction for an abuse of discretion. *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004). We affirm the issuance of the preliminary injunction but vacate the injunction because of its scope and remand for further proceedings.

We emphasize that this case comes before us on review of a preliminary injunction. Because our review of a preliminary injunction is limited to "the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our

disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982).

A

**[1]** "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008).

**[2]** The district court properly considered each of these factors. In considering the likelihood of success on the merits, the court correctly held that to be liable for trademark infringement, someone must "(1) use in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle*, 505 F.3d at 902. The court properly cited the factors listed in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), to determine the likelihood of confusion for the Wobenzym mark.

**[3]** In evaluating irreparable harm, the court cited Ninth Circuit law holding that "[i]n a trademark infringement claim, 'irreparable injury may be presumed from a showing of likelihood of success on the merits.' " *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)). Because the court found a likelihood of success on the merits, it reasonably presumed irreparable injury. The court similarly did not abuse its discretion when it evaluated the balance of hardships or public interest.[2]

---

[2]Marlyn claims that the district court improperly required Marlyn to show that Mucos had ceased manufacturing its old Wobenzym formula-

B

As an affirmative defense to Mucos's trademark infringement claim, Marlyn argues that its manufacture and sale of Wobenzym using Mucos's mark is justified because of the terms laid out in the Distributorship Provision. Under that provision, Marlyn would acquire a license to use Mucos's mark if Mucos ever ceased production of Wobenzym. To succeed in its affirmative defense, Marlyn must show first that the Distributorship Provision was enforceable and second that Mucos ceased production of Wobenzym. We need not determine whether the Distributorship Provision was enforceable under Arizona law because we see no clear error in the district court's factual determination that Mucos never ceased production of Wobenzym. For the sake of the cessation analysis, we assume without deciding that the Distributorship Provision was enforceable.

Marlyn argues that because Mucos's formulation of the Wobenzym supplement in 2006 did not conform to the Wobenzym label, Mucos constructively stopped producing Wobenzym. Mucos counters that this discrepancy is unimportant because Mucos merely standardized the enzyme levels around their activity level per milligram rather than their input weight, a procedure Mucos claims is a "common practice." Marlyn relied on the testimony of Dr. Scavetta, its director of laboratory operations, to argue that both enzyme activity level and input weight are important.

---

tion for distribution in the United States. Mucos had the burden of proving only the four factors that justify a preliminary injunction; that burden was properly laid by the district court. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007). Marlyn's argument that Mucos had ceased production was an affirmative defense that Marlyn, not Mucos, had the burden of showing. *Id.* ("[O]nce the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the nonmoving party to show a likelihood that its affirmative defense will succeed." (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429 (2006))).

The district court held that the change in the Wobenzym formula was not significant enough to constitute cessation of production because the new formula maintained the desired level of enzymatic activity per milligram. The district court did not find Dr. Scavetta's testimony credible and noted multiple contradictions in his testimony.

When a district court uses extrinsic evidence to interpret a contract, we review its findings of fact for clear error. *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 836 (9th Cir. 2001). Review for clear error is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted). "[I]f the district court's findings are plausible in light of the record viewed in its entirety, the appellate court cannot reverse even if it is convinced it would have found differently." *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004). Additionally, we pay special deference to a trial court's credibility findings. *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985).

**[4]** We see no reason to disturb the district court's finding. Marlyn did not meet its burden in proving its defense because it did not show that the change in question constituted a cessation of production. Trademark owners are permitted to make small changes to their products without abandoning their marks:

> A change in the type, formula or blend of a product sold under the same mark will probably not constitute abandonment of the rights in the old mark. For example, no abandonment occurred as a result of: a change in the blend of tobacco; in a formulation of paint; a change in the type of wheat used in flour; or even a change in the performers and nature of a musical performing group.

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 17:24 (4th ed. 2008) (citing cases) (footnotes omitted). The record supports the district court's conclusion that Mucos's changes did not significantly alter the product because it held nearly constant the activity levels of the enzymes, which were the most important component of the product.

[5] For these reasons, we conclude that the district court did not clearly err in finding, based on evidence and testimony admitted thus far, that Mucos did not cease production of Wobenzym and that Marlyn did not have the right to use Mucos's mark.

C

Marlyn also challenges the scope of the injunctive relief provided by the district court. The district court ordered Marlyn to stop manufacturing and distributing its Wobenzym product, recall its already-distributed products, and provide restitution to its Wobenzym customers.

[6] A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). A mandatory injunction "orders a responsible party to 'take action.' " *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). A mandatory injunction " 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.' " *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury com-

plained of is capable of compensation in damages." *Id.* at 1115 (quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F. Supp. 520, 531 (S.D.N.Y. 1963)).

**[7]** The *status quo ante litem* referenced in *Chalk* means " 'the last, uncontested status which preceded the pending controversy.' " *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). In this case, Marlyn had distributed its own version of Wobenzym prior to the lawsuit. The district court ordered that Marlyn recall its product and give restitution to customers who had bought its product. That remedy went beyond the status quo pending litigation and instead required Marlyn to take the affirmative step of recalling its product. Thus, the recall order at issue did not operate simply to preserve the status quo, or to restrain Marlyn from further acts of possible infringement, because it involved products no longer within Marlyn's possession. In short, the district court's order was something more than a prohibitory preliminary injunction.

**[8]** The Third Circuit has considered similar circumstances and concluded that a district court considering a motion for a preliminary injunction directing recall of a product in a trademark infringement case should consider additional factors in assessing the request. *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 233 (3d Cir. 2003); *see also United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976); Theodore C. Max, *Total Recall: A Primer on a Drastic Form of Equitable Relief*, 84 Trademark Rep. 325, 327 (1994). Under the Third Circuit's formulation, to justify a recall, the infringed company must first satisfy the traditional standard for a prohibitory preliminary injunction. In addition, the district court must consider three further factors:

> (1) the willful or intentional infringement by the defendant; (2) whether the risk of confusion to the public and injury to the trademark owner is greater

than the burden of the recall to the defendant; and (3) substantial risk of danger to the public due to the defendant's infringing activity.

*Gucci*, 354 F.3d at 233.

[9] Given the nature of the requested remedy, we conclude that the Third Circuit's formulation is sound, and we join it in requiring the district court to consider these factors before granting a preliminary injunction directing product recall in a trademark infringement case. If the district court makes a finding that the infringing product causes a substantial risk of danger to the public, it should order a recall.

As the district court did not have the benefit of this decision when deciding this case, it did not analyze these additional factors. It did, however, rest its recall decision in part on the third factor—substantial risk of danger to the public due to the defendant's infringing activity—in concluding that there was a public health hazard in allowing the product to remain on the market. However, the record does not support the existence of a public health risk necessary to invoke the interlocutory remedy of product recall. The only record support for the proposition that Marlyn's Wobenzym is unsafe for public consumption is the testimony of Dr. Scavetta that the proteolytic activity in some batches of Marlyn's Wobenzym was 250% greater than what it should have been. However, Scavetta did not testify that this formulation was unsafe for human consumption. Moreover, the district court stated that it did not find Dr. Scavetta's testimony to be credible. There was no other testimony or evidence upon which the district court could make its conclusion that the product was hazardous for public consumption.

[10] Therefore, we must vacate the district court's order insofar as it requires product recall and restitution and remand the issue for the district court's further consideration in light of this opinion.

III

After the district court granted Mucos's motion for preliminary injunction but before it issued its explanatory opinion, Marlyn submitted a post-hearing motion to introduce additional evidence. The district court construed this motion as a request to reconsider its decision in light of Marlyn's new evidence. The district court denied Marlyn's motion. We review the district court's denial of Marlyn's post-hearing motion for reconsideration for an abuse of discretion. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006).

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Marlyn requested that the district court reconsider its preliminary injunction in light of three new pieces of evidence: (1) a draft revised production and distribution license agreement with Mucos; (2) the expert declaration of Dr. Lucia Desser; and (3) an additional declaration from Joachim Lehmann. Each of these pieces of evidence could have been introduced earlier in the litigation.

First, Marlyn sought to introduce a draft contract between Mucos and Marlyn prepared by Mucos in 2005. Marlyn argues that the draft "unambiguously establishes that Section 13 of the Settlement Agreement constitutes a valid and enforceable distribution agreement between the parties and has been treated as such by them since its inception." Marlyn claims to have discovered the draft shortly before the hearing

but that the district court did not want to receive evidence on the distribution agreement during the hearing.

**[11]** Although the district court stated that it did not want to consider the Settlement Agreement during the hearing, it did not prohibit or even discourage Marlyn from submitting the draft contract. The hearing concluded on November 9, 2007, and the district court did not grant Mucos's motion for preliminary injunction until November 13, 2007. Marlyn could have submitted the draft before the court made its decision. Thus, the district court did not abuse its discretion by denying Marlyn's motion to introduce the draft contract after the court had already issued its opinion.

**[12]** Second, Marlyn sought to introduce the declaration of Dr. Lucia Desser to rebut the testimony of Dr. Kreuger, a pharmacy professor who testified about the production of nutritional supplements. Marlyn claims that it had no opportunity to rebut Krueger's testimony because Mucos had not previously disclosed the testimony. However, Mucos had notified Marlyn in the Joint Status Report that it intended to call a witness who was "an expert to knowledge of one of ordinary technical skill in the field of the production and analysis of nutritional supplements." From this description, Marlyn should have been prepared to rebut Dr. Kreuger's testimony during cross-examination or during its direct examination of Dr. Scavetta. The district court did not abuse its discretion in denying introduction of Dr. Desser's declaration.

**[13]** Finally, Marlyn sought to introduce a declaration of Joachim Lehmann. Lehmann's declaration reported on an email he had received from an Austrian scientist "confirm-[ing] that there is no single . . . test for total proteolytic activity of enzyme combinations." Lehmann received the email on November 11. The district court did not decide on the preliminary injunction until November 13. Marlyn could have introduced Lehmann's declaration before the district court made its decision, but did not. Thus, the district court did not abuse

its discretion when it denied introduction of Mr. Lehmann's declaration.

## IV

For the foregoing reasons, we AFFIRM the district court's grant of a preliminary injunction and its denial of Marlyn's motion to reconsider. We VACATE the district court's imposition of recall and restitution and REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**