FERNANDEZ, Circuit Judge,
concurring in part and dissenting in part:
I agree that the district court did not abuse its discretion when it decided to issue a preliminary injunction requiring the consideration of “financial ability” and “alternative conditions of supervision”[1] in making determinations regarding the release of aliens who have been detained pursuant to 8 U.S.C. § 1226(a). However, I do not agree with the breadth of the in-junctive order that was issued. Thus, I respectfully concur in part and dissent in part..
A. Concurrence
While I do generally concur in the merits decision itself (including parts I and II and the portion of the opinion which precedes them), I do so with a caveat and with some exceptions as to language that I consider unnecessary, overbroad, or otherwise problematic.
1. Caveat—Throughout the opinion, the language used might be taken to declare that there must be two separate (non-overlapping) steps that a hearing officer must take in making a bond determination: first, the officer must determine if the alien can be released at all;[2] and second, if *1001 the alien meets the first step, the officer’s remaining determination must be made based upon the nature of the alien’s financial ability only. To the extent that the opinion could be read that way, it should not be. Rather, a myriad of factors go into deciding the release question,[3] and all we say here is that financial ability must be part of that mix. As I see it, the majority opinion merely requires that hearing officers must consider financial ability along with the rest of the farrago of factors that they consider.
2. Exceptions
a. I do not join the discussion in the fourth paragraph of part II.A. For example, while there is a serious danger in a failure to consider financial ability, I do not agree that reasonable decisions are unlikely without it. Moreover, the effectiveness of various approaches is best decided at trial rather than by accepting claims in an amicus brief.
b. I do not join in the discussion in the sixth through tenth paragraphs of part II.A. because I am not convinced that cases prohibiting the criminal punishment of persons who cannot afford to pay judgments of one kind or another are significantly similar to the case at hand.
c. I do not fully join the discussion in the fifteenth paragraph of part II.A. because I am not satisfied that consideration of potential alternative conditions of release imposes “almost no [administrative] costs” or that the preliminary injunction, as, written, will impose a “minimal burden” on the government.
d. I do not join in the third paragraph of part H.B., or in the conclusion therein.
e. I do not join the fourth and fifth paragraphs of part II.C. to the extent that they signal an approval of the full scope of the injunctive order which we are reviewing.
f. I do not join the third and fourth paragraphs of part H.D., which I see as unnecessary and problematic. For example, I do not think we should be deciding public policy issues based upon how we think the government should spend .its money in an area as fraught with controversy as immigration.
B. Dissent: Scope of the Preliminary Injunction
The preliminary injunction issued here has both prohibitory and mandatory aspects.[4] In considering the propriety of the injunction, we must bear in mind the fact *1002 that mandatory terms[5] present more difficulties than prohibitive terms,[6] and it is the former that I disagree with in this case.
Even without regard to the form and despite the rulings of the district court and the thrust of the majority opinion, “[a] preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment.” Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984). A mandatory injunction is much more likely to trench on that principle than is a prohibitory injunction. For that reason, we have stated that:
A mandatory injunction goes well beyond simply maintaining the status quo [pjendente lite [and] is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.
Marlyn Nutraceuticals, 571 F.3d at 879 (citations and internal quotation marks omitted); see also Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The majority bridles at our wisely adopted distinction, but reluctantly agrees that it must be followed. Still, I fear that its distaste for the distinction, together with its declaration that it is “unlikely” that the outstanding bonds are reasonable, has helped to lead it astray. However, when the above standards are applied, I cannot agree with the district court order which proceeds as if the merits have been finely adjudicated and which immediately and inappropriately imposes mandatory duties upon the government accordingly.
More specifically, I disagree with the district court’s order in the ways set forth below.
*1003 1. As to paragraph I.1.[7] of the order, while I agree that the government must consider financial ability in future release hearings,[8] I do not agree that it must forthwith conduct new bond hearings for all those who are currently detained, regardless of the nature of the records regarding their prior hearings. To the extent this paragraph contemplates that must be done, I do not agree.
2. I do not agree with the scope of paragraphs 1.2. and 1.3. of the order. Again, I do agree that financial ability must be considered at future release hearings, but I do not agree that the district court can, at this point, order the government to consult with class counsel and “develop and agree” to guidelines. While it is suggested that this is a mere conferencing and consulting direction, it plainly is not just that—it directs the government to “agree” with class counsel. As I see it, at this point, the government must consider financial ability. If detailed procedures beyond those that already exist (or amendments to current procedures) are needed for that purpose, the government’s determination and adoption of those procedures should basically be through the usual governmental processes[9] rather than in a forced march and a required agreement with class counsel. I note that all of that is to take place within 30 days of the order. That by itself is unreasonable. Incidentally, I would see no real difficulty if the government were merely required to distribute the preliminary injunction order to the relevant parties (officers and class members) once a proper order is issued. These paragraphs should be set aside or rewritten accordingly.
3.I do not agree with paragraph I.5., which requires that hearings for all current detainees be conducted within 45 days of the order. Specifically I do not agree with the requirement that hearings be held for all current detainees, and the timing exacerbates the problem. Interestingly enough, the government is required to meet, confer, and agree with class counsel and give necessary notices within 30 days. It is then to conduct hearings for all of those currently detained within 15 days thereafter, or, of course, agree earlier- and gain some extra hearing time. I would also strike this unreasonable paragraph.
In short, at this preliminary injunction stage of the proceeding, I agree that the government must consider financial ability in future hearings, a requirement that I find to be essentially prohibitory. I do not agree with the other essentially mandatory aspects of the order regarding development and agreement on guidelines, or the holding of hearings for all current detainees forthwith and within the strict deadlines set out by the district court.
Thus, I respectfully concur with the majority opinion in part and dissent in part.

. To avoid referring to both financial ability and alternative conditions each time, I will hereafter just use the former to include both, unless otherwise stated.

. See for example notes 3 and 18 of the majority opinion.

. See, e.g., In re Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).

. As relevant to this opinion, the order reads as follows:
"I. Procedures for ICE Custody Determinations, IJ Custody Redeterminations, and BIA Review
1. For all noncitizens detained under 8 U.S.C. § 1226(a) in the Central District of California (the "District”) after the date of this Order, U.S. Immigration and Customs Enforcement (“ICE”) and the Executive Office of Immigration Review ("EOIR”), when setting, re-determining, and/or reviewing the terms of any person's release, must (a) consider the person’s financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person’s appearance; and
(c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk.
2. Within seven days of this Order, Defendants will meet and confer with Plaintiffs’ counsel ("Class Counsel”), and continue to confer thereafter with Class Counsel in good faith, to develop and agree to the following:
a. guidelines for ICE and the Immigration Judges ("IJs”) to apply in determining an'individual's financial ability to pay a bond;
b. instructions to all ICE officers who conduct initial custody determinations under Section 1226(a) and to all IJs in the District that inform them of the requirements of this Order (including the *1002 guidelines developed in Paragraph 2(a) above); and
c. a notice for all class members currently detained in the District summarizing the requirements of this Order in connection with their upcoming custody redetermination hearings pursuant to this Order.
3. As soon as practicable, but in any event no later than thirty days after this order, Defendants shall:
a. issue the instructions developed in Paragraph 2(b) above (including the guidelines developed in Paragraph 2(a) above) to all ICE officers who conduct initial custody determinations under Section 1226(a) and to all IJs in the District; and
b. send the notice developed in Paragraph 2(c) above to all class members currently detained in the District.
4. Defendants will notify Class Counsel of the date and location of each new custody redetermination hearing set pursuant to this Order at least seven days in advance of the hearing.
5. Within 45 days of this order, the EOIR will provide each class member currently detained in the District with a new custody redetermination hearing where the IJ decides whether the class member should be released on his or her own recognizance or released on a money bond and/or other conditions of supervision. When setting a class member's terms of release, the IJ must comply with Paragraph 1 of this Order. Nothing in this Order prevents a class member from seeking a continuance to prepare for his or her hearing.
6.Where a class member or the government appeals the IJ’s custody redetermination to the Board of Immigration Appeals (“BIA”), the BIA will determine whether the IJ has properly performed the analysis set forth in Paragraph 1, which is required by 8 U.S.C. § 1226(a).”

. See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) ("A mandatory injunction orders a responsible party to take action.” (internal quotation marks omitted)).

. See id. at 878 ("A prohibitory injunction prohibits a party from taking action .... ”).

. All references to paragraphs in the order are to those as set forth in note 4, supra.

. See 8 U.S.C. § 1226(a).

. See Bresgal v. Brock, 843 F.2d 1163, 1171 (9th Cir. 1987).