The COCA–COLA COMPANY, a corporation, Plaintiff-Appellee,

v.

OVERLAND, INC., doing business as Topaz Lodge and Casino, and R.H. Hobson, Defendants-Appellants.

No. 80–4376.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1981.

Decided Nov. 18, 1982.

Glade L. Hall, Ltd., Reno, Nev., for defendants-appellants.

Elmer Wm. Hanak, III, Atlanta, Ga., argued for plaintiff-appellee; Albert F. Pagni, Vargas & Bartlett, Reno, Nev., John N. Hauser, San Francisco, Cal., on brief.

Appeal from the United States District Court for the District of Nevada.

Before CHOY and WALLACE, Circuit Judges, and EAST,* District Judge.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

CHOY, Circuit Judge:

The Coca-Cola Company sued for injunctive relief charging Overland, Inc. with trademark infringement and unfair competition in violation of the Lanham Trade-Mark Act (Lanham Act), 15 U.S.C. § 1051 et seq.[1] Overland denied liability and counterclaimed charging Coca-Cola with using trademark-infringement suits as a means of attempting to monopolize the soft-drink syrup market in violation of § 2 of the Sherman Act, 15 U.S.C. § 2. The district court granted summary judgment against Overland on both Coca-Cola's complaint and Overland's antitrust counterclaim. The court permanently enjoined Overland and its agents, servants, and employees, from substituting in response to orders for "Coca-Cola" or "Coke" any beverage other than that sold by the Coca-Cola Company unless they first give the customer oral notice of the substitution and obtain the customer's approval. It also dismissed Overland's antitrust counterclaim with prejudice. Because we find that there are no genuine issues of material fact with respect to either Overland's liability or Coca-Cola's non-liability, and because we also find that Coca-Cola is entitled to judgment as a matter of law, we affirm.

**1.** Coca-Cola's complaint also contained pendent state-law claims charging Overland with trademark infringement and unfair competition. We decline to address these claims because they are not necessary to our disposition of this case.

**2.** The Coca-Cola Company is the owner of the trademarks "Coca-Cola" and "Coke" which are both validly registered in the United States Patent and Trademark Office and in the office of the Nevada Secretary of State.

**3.** Coca-Cola also argues that the Topaz Lodge and Casino's undisputed practice of writing "Coke" on guest checks that were presented to customers who in fact received Pepsi-Cola constitutes trademark infringement and unfair competition. This is a subsidiary argument that we need not reach to dispose of this case.

**4.** The asserted function of Coca-Cola's Trade Research Department is to ensure that retail establishments do not misuse the trademarks of the Coca-Cola Company. The standard procedure followed by Trade Research employees is to visit retail establishments who do not

## I. *Facts*

Overland operates a restaurant and bar known as the Topaz Lodge and Casino. The only cola soft drink sold at the Topaz Lodge and Casino is Pepsi-Cola. Coca-Cola's suit for trademark infringement and unfair competition is based on the Topaz Lodge and Casino's alleged practice of serving Pepsi-Cola in response to specific orders for "Coca-Cola" or "Coke"[2] without orally notifying customers that a substitution has been made.[3] In support of its motion for summary judgment, Coca-Cola submitted affidavits of its Trade Research employees assigned to investigate the Topaz Lodge and Casino. These affidavits document that on 23 of 29 separate occasions over a three-year period, employees at the Topaz Lodge and Casino substituted, without comment, Pepsi-Cola in response to specific orders for "Coca-Cola" or "Coke."[4]

Overland does not seriously dispute that its employees have on occasion substituted Pepsi-Cola, without comment, in response to orders for "Coca-Cola" or "Coke." Taken alone, such conduct by Overland's employees appears to present a clear-cut case of trademark infringement and unfair competition. *Coca-Cola Co. v. Dorris,* 311 F.Supp.

serve the products of the Coca-Cola Company and, without identifying themselves as Trade Research employees, place a specific order for "Coca-Cola" or "Coke." If a beverage is served without comment, the Trade Research employees take a sample of the beverage and send it to Coca-Cola's laboratory for chemical analysis in order to establish that the beverage is not a product of the Coca-Cola Company. The Trade Research employees carefully document all the facts pertaining to their orders.

An employee of Coca-Cola's Trade Research Department first visited the Topaz Lodge and Casino in December 1975. After discovering that another beverage was being served, without comment, in response to specific orders for "Coca-Cola" or "Coke," the Coca-Cola Company appealed to Overland to stop its deceptive practice. When subsequent investigations revealed that the deceptive practice was continuing, Coca-Cola again communicated its protest to Overland. Only when further investigations showed that the deceptive practice had not ceased did Coca-Cola bring suit for trademark infringement and unfair competition.

287, 289 (E.D.Ark.1970), *cited with approval in HMH Publishing Co. v. Lambert,* 482 F.2d 595, 598 n. 5 (9th Cir.1973); *see Heaton Distributing Co. v. Union Tank Car Co.,* 387 F.2d 477, 484 (8th Cir.1967). Overland, nevertheless, appeals the district court's grant of summary judgment and injunctive relief, claiming that it has certain defenses that raise genuine issues of material fact. Specifically, Overland contends that there are genuine issues of material fact as to whether (1) certain signs indicating that only Pepsi-Cola would be served provided customers with adequate notice of the substitutions; (2) "Coke" has become a generic term not eligible for protection under the Lanham Act; (3) the permanent injunction issued by the district court requiring oral notice of the substitutions is impossible to perform; and (4) Coca-Cola is using trademark-infringement suits as a device to achieve a monopoly in the soft-drink syrup market and thus is guilty of unclean hands. Overland further contends that the validity of its antitrust counterclaim raises genuine issues of material fact.

## II. *Standard of Review*

Summary judgment is proper if the pleadings and evidence submitted in support of the motion show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d 665, 668 (9th Cir.1980). In reviewing the grant of summary judgment, we must view all evidence in the

light most favorable to the party opposing the motion. *Id.*

## III. *Discussion*

### A. *Signs as Adequate Notice*

Overland has posted signs in the restaurant and bar, and placed disclosures in its menus advising customers that Pepsi-Cola is the only cola beverage served.[5] Overland contends that its signs and disclosures provided adequate notice of the beverage substitutions and thus supply a complete defense to the charges of trademark infringement and unfair competition. It maintains that the adequacy of its signs and disclosures at least raises a genuine issue of material fact.

Neither the Supreme Court nor the circuit courts of appeals have apparently ruled on what constitutes adequate notice in beverage-substitution cases. The district courts, however, have uniformly held that signs do not provide adequate notice. *E.g., Coca-Cola Co. v. Dorris,* 311 F.Supp. at 290; *Coca-Cola Co. v. Foods, Inc.,* 220 F.Supp. 101, 106 (D.S.D.1963). The district courts require that for notice to be adequate, the customer must be informed orally that the beverage ordered is not available and be given the opportunity to accept or reject the substituted product. *Coca-Cola Co. v. Dorris,* 311 F.Supp. at 290.

Although we decline to rule that signs can never provide adequate notice, we adopt the general rule set forth by the district courts that oral explanations, and not signs, are normally required to notify customers adequately in beverage-substitution cases.[6] Because we find Overland's signs and disclosures were not sufficiently

---

5. Although the record is not entirely clear, it appears that during the period Coca-Cola asserts the infringement took place, Overland had posted in the Topaz Lodge and Casino's restaurant and bar as many as four 8- by 10-inch signs, and three slightly larger signs advising customers that Pepsi-Cola was the only cola beverage served.

6. Some of the district court cases holding that signs do not provide adequate notice state in their findings of fact that the defendant substituted beverages without oral explanation and

"without taking sufficient effective action" to inform customers of the substitution. *E.g., Coca-Cola Co. v. Dorris,* 311 F.Supp. 287, 291 (E.D.Ark.1970); *Coca-Cola Co. v. Scrivner,* 117 U.S.P.Q. (BNA) 394, 395 (S.D.Cal.1958). This implies that the district courts in those cases believed that something other than oral notice could suffice. The cases thus leave open the possibility that signs that are sufficiently conspicuous may provide adequate notice of beverage substitutions.

conspicuous [7] to justify a departure from this general rule, we reject as a matter of law Overland's defense that its signs and disclosures provided adequate notice.[8] It thus follows that the adequacy of Overland's signs and disclosures does not raise a genuine issue of material fact.

### B. *"Coke" as a Generic Term*

■ Overland argues that the trademark "Coke" [9] has become generic to all cola beverages and thus is no longer entitled to protection under the Lanham Act.[10] It maintains that whether the trademark "Coke" has become generic raises a genuine issue of material fact which precludes the grant of summary judgment. We disagree.

■ In its answer to Coca-Cola's complaint, Overland admits that "Coke" is a validly-registered and subsisting trademark under federal law. Federal registration of a trademark endows it with a strong presumption of validity. *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 509 (2d Cir.1969); *see* the Lanham Act, 15 U.S.C. §§ 1057 and 1115. The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic. *See Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7, 11 (2d Cir.1980); *Miss Universe, Inc. v. Patricelli*, 408 F.2d at 509.

■ A party moving for summary judgment is entitled to the benefit of any relevant presumptions that support the motion. *United States v. General Motors Corp.*, 518 F.2d 420, 441–42 (D.C.Cir.1975); *see* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 56.15[3] (2d ed. 1982). By virtue of the presumption that the trademark "Coke" is not generic, Coca-Cola has met its burden of demonstrating that the genericness of the trademark "Coke" does not raise a genuine issue of material fact.[11]

Once the moving party has sufficiently supported his or her motion for summary judgment, the opposing party "may not rest upon the mere allegations or denials in his pleadings," but must by affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Overland attempts to rebut the presumption that "Coke" is not generic and to establish the existence of a genuine issue of material fact by submitting affidavits taken from employees at the Topaz Lodge and Casino. These affidavits state that the employees *believe* that customers ordering "Coke" are using the term in a generic sense.

■ These affidavits are clearly insufficient to rebut the presumption that the

---

**7.** *See* n. 5 *supra.*

**8.** Overland argues that we should overrule the cases holding that signs are insufficient to provide adequate notice of beverage substitutions because Coca-Cola, through its numerous trademark infringement suits, has virtually shaped the case law in the area. We decline Overland's invitation to overrule the existing case law. We do not believe that Coca-Cola's role in shaping the case law diminishes in any way the value of those cases as precedent.

**9.** Overland also argued before the district court that, in addition to the trademark "Coke," the trademark "Coca-Cola" has become generic. Overland, however, has not pursued on appeal the claim that the genericness of the trademark "Coca-Cola" raises a genuine issue of material fact.

**10.** A trademark which becomes generic is not entitled to protection under the Lanham Act. *See* 15 U.S.C. §§ 1064(c), 1065(4), and 1115(b)(4). An originally non-generic, valid

trademark becomes generic and invalid when the *principal* significance of the word to the public becomes the indication of the nature or class of an article, rather than the indication of the article's origin. *Helene Curtis Industries v. Church & Dwight Co.*, 560 F.2d 1325, 1332 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

**11.** In addition to the presumption of non-genericness flowing from the fact of registration, Coca-Cola also cites numerous cases finding that "Coke" is a non-generic trademark in support of its motion for summary judgment.

Coca-Cola also relies on a trademark-recognition survey discussed in a case not involving Coca-Cola. In that survey, "Coke" was the second-highest-ranking trademark with 76% of the public sampled recognizing "Coke" as a trademark rather than a generic term. *E.I. Dupont de Nemours and Co. v. Yoshida International, Inc.*, 393 F.Supp. 502, 526 n. 54 (E.D. N.Y.1975).

trademark "Coke" is not generic and thus do not establish the existence of a genuine issue of material fact. Before affidavits opposing a motion for summary judgment can be given any weight, Rule 56(e) requires that they be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify on the matters stated therein. *Id.* Overland's employees are not qualified to testify as to what their customers are thinking when using the term "Coke." *See* Fed.R.Evid. 701. The affidavit statements of the employees that they believe customers use "Coke" in the generic sense are thus inadmissible and must be disregarded as failing to meet the requirements of Rule 56(e). Moreover, even if the employees' affidavits are considered, they are too speculative and insubstantial to establish the existence of a genuine issue of material fact with respect to the genericness of the trademark "Coke." *See British Airways Board v. Boeing Co.*, 585 F.2d 946, 951–52 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

### C. *Performing the Injunction*

The district court permanently enjoined Overland and its agents, servants, and employees from substituting any beverage in response to specific orders for "Coca-Cola" or "Coke" unless they first give the customer oral notice of the substitution and obtain the customer's approval. Overland argues that the injunction is impossible to perform because it cannot guarantee that its employees will give the required oral notice on each and every occasion that "Coca-Cola" or "Coke" is ordered.[12] Overland contends that a court should not grant an injunction that is impossible to perform. It claims that the impossibility of its performing the injunction raises a genuine issue of material fact.

We find Overland's claim of impossibility unconvincing and hold that it is too insubstantial to raise a genuine issue of material fact.[13] Oral notice by employees that a trademarked product ordered by a customer is unavailable is a common, everyday practice at restaurants and bars.[14] We find it difficult to believe that the required oral notice to customers that "Coca-Cola" or "Coke" is unavailable will be impossible for Overland's employees to remember or perform. Moreover, since the injunction binds not only Overland but its agents, servants, and employees, the employees themselves will be subject to contempt proceedings if they fail to give customers the required oral notice.[15] The threat of potential contempt

---

**12.** Overland cites the non-professional nature of restaurant help, the high turnover of restaurant employees, the rushed working conditions, and the human inability to remember always to give the requisite oral notice as reasons for its inability to guarantee employee compliance.

**13.** Overland's claim of impossibility is in part based on the assumption that *any* failure to give the required oral notice will result in contempt liability. We do not believe that an isolated and infrequent failure to give the required notice will subject Overland to contempt liability. Moreover, even if liability is found, the good-faith effort of Overland to assure employee compliance, and its substantial success in securing such compliance, should constitute factors mitigating against the assessment of a penalty. *See Washington Metropolitan Area Transit Authority v. Amalgamated Transit Union, National Capital Local Division 689*, 531 F.2d 617, 621–22 (D.C.Cir.1976).

**14.** The record shows that employees at the Topaz Lodge and Casino have had no difficulty

in orally notifying customers that a specific brand of alcoholic beverage ordered is not available. For example, a bartender at the Topaz Lodge and Casino in response to an order of Seagrams Seven, was able to inform the customer that Seagrams Seven was unavailable and recommend Canadian Mist as a substitute.

**15.** Rule 65(d) of the Fed.R.Civ.P. provides that an injunction is binding upon "the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Pursuant to Rule 65(d), non-party employees have been held in contempt for violating injunctions that were issued in cases where their employers were the defendants. *See, e.g., Interstate Commerce Commission v. Rio Grande Growers Cooperative*, 564 F.2d 848, 849 (9th Cir.1977); *Shakman v. Democratic Organization*, 533 F.2d 344, 351–52 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

liability will provide Overland's employees with sufficient incentive to give the required notice, thereby easing Overland's task of securing their compliance and eliminating any problem of impossibility.[16]

### D. Antitrust Counterclaim and Unclean-Hands Defense

Overland raises the affirmative defense that Coca-Cola is guilty of unclean hands because it is bringing trademark-infringement suits as part of a scheme to obtain a monopoly in the soft-drink syrup market. In combination with this unclean-hands defense, Overland filed a counterclaim charging Coca-Cola with attempting to monopolize the soft-drink syrup market in violation of § 2 of the Sherman Act. 15 U.S.C. § 2. Overland describes the alleged scheme employed by Coca-Cola in its attempt to monopolize the soft-drink syrup market as follows:

Coca-Cola dispatches employees to uncover retailers substituting, without oral notice, another cola beverage in response to orders for "Coca-Cola" or "Coke." Coca-Cola then brings trademark-infringement suits against these retailers seeking permanent injunctions prohibiting such substitutions unless the customer is given oral notice of, and assents to, the substitution. Because the term "Coke" is used generically by customers, and because of the human failings of employees, Coca-Cola is aware that it is virtually impossible for retailers to comply with the requested injunctions. Coca-Cola nevertheless harasses retailers by bringing trademark-infringement suits seeking such injunctions, and when the injunctions are granted, continues to harass retailers by threatening and actually instituting contempt proceedings for mere technical violations of the injunctions.

Overland contends that this conduct demonstrates that the real motive behind Coca-Cola's trademark-infringement suits is not trademark protection, but to use the suits as a device to coerce retailers into switching to the sale of Coca-Cola's product. Overland further claims that Coca-Cola has successfully employed trademark-infringement suits to coerce many retailers into switching to its product and that Coca-Cola's present suit was brought for the purpose of achieving the same result. On the basis of these allegations, Overland asserts that the validity of its antitrust counterclaim and unclean-hands defense raises genuine issues of material fact.

Overland does not contend that the trademark-infringement suits brought by Coca-Cola lack merit. In fact, Overland acknowledges Coca-Cola's overwhelming suc-

---

**16.** Overland also somewhat ambiguously argues that its good faith in attempting to prevent the beverage substitutions provides a ground for reversing the district court's decision. If Overland is claiming that the injunction should be vacated because its good faith justifies the imposition of a more lenient injunction, this claim is without merit. The district court has substantial discretion in defining the terms of an injunction and appellate review is correspondingly narrow. *Lemon v. Kurtzman,* 411 U.S. 192, 200, 93 S.Ct. 1463, 1469, 36 L.Ed.2d 151 (1973). Even assuming that Overland's assertions of good faith are true, we do not believe the equities are such that the district court abused its discretion in imposing the injunction.

If Overland is claiming that its good faith provides a defense to the charge of trademark infringement and unfair competition and thus raises a genuine issue of material fact, it is mistaken. Good faith or lack of wrongful intent does not provide a valid defense to a charge of trademark infringement. *Coca-Cola* *Co. v. Dorris,* 311 F.Supp. at 290; *see Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 157–58 (9th Cir.), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963); *Safeway Stores, Inc. v. Rudner,* 246 F.2d 826, 829 (9th Cir.1957). The basic policy behind the Lanham Act is to protect customers against likelihood of confusion. *International Order of Job's Daughters v. Lindeberg & Co.,* 633 F.2d 912, 917 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981); *Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co.,* 349 F.2d 389, 395 (2d Cir.1965), *cert. denied,* 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966). Given this policy, the determination of liability focuses on the objective fact of likely customer confusion and not on the subjective mental state of the infringer. Because good faith is not a defense, the question of Overland's intent in allowing the substitution of Pepsi-Cola in response to orders for "Coca-Cola" or "Coke" does not raise a genuine issue of fact.

cess in these suits, citing numerous cases in its brief in which Coca-Cola was the prevailing party. Overland's theory is that even though Coca-Cola's suits have merit, they are still sham suits subject to antitrust regulation because they are brought not for the purpose of trademark protection, but for the purpose of coercing retailers into switching to Coca-Cola's product. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972) (explaining the sham exception to *Noerr-Pennington* doctrine).

We need not decide whether the bringing of meritorious trademark-infringement suits can ever constitute sham suits violative of the antitrust laws.[17] This is because even accepting Overland's legal theory as viable, we find that its antitrust counterclaim and unclean-hands defense do not raise any genuine issues of material fact.

■ Summary judgment is not favored in antitrust cases particularly where motive and intent are at issue. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Such relief, however, is not precluded in antitrust cases and when properly used, is a valuable means of preserving scarce judicial time and resources. *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620, 622 (9th Cir.1977); *see Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors*, 637 F.2d 1376, 1381 (9th Cir.), *cert. denied*, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

Coca-Cola as the moving party has the burden of establishing the absence of any genuine issue of material fact with respect to Overland's antitrust counterclaim and unclean-hands defense. This burden is satisfied once Coca-Cola rebuts Overland's allegations of attempted monopolization by introducing probative evidence supporting an alternative interpretation of its conduct. *Blair Foods, Inc. v. Rancher's Cotton Oil*, 610 F.2d at 671. If Overland then fails to come forward with specific factual support for its allegations of attempted monopolization, summary judgment is appropriate. *Id.*

■ Coca-Cola rebutted Overland's allegations and satisfied its burden by producing evidence that its present and past trademark-infringement suits were legitimate actions necessary to protect against infringement of its trademarks. The record not only shows that Coca-Cola has been eminently successful in its past trademark-infringement suits, but that its present suit, on the basis of the evidence compiled, was fully warranted. Coca-Cola thus produced probative evidence that its trademark-infringement suits are justifiably interpreted as the legitimate exercise of its right to protect its trademarks, and not as devices used to coerce retailers to switch to its product.

Overland failed to respond to Coca-Cola's showing by coming forward with specific factual support for its allegations of attempted monopolization. Overland produced no evidence that Coca-Cola had attempted to persuade it to switch to Coca-Cola's product. Nor has Overland identified a single retailer that had been coerced to switch as the result of Coca-Cola's institution of a trademark-infringement suit.[18] Because Overland failed to come forward with specific factual support for its allegations of

---

**17.** We merely pause to note that we have found no case directly supporting the proposition that the bringing of meritorious suits can constitute sham suits violative of the antitrust laws. Moreover, the validity of such a proposition appears questionable in light of the existing case law. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *but see Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 652–53, 662, 97 S.Ct. 2881, 2898, 2903, 53 L.Ed.2d 1009 (1977) (Stevens, J., dissenting).

**18.** It should also be noted that Overland relies upon the alleged impossibility of performing injunctions requiring oral notice as providing Coca-Cola with the coercive leverage necessary to force retailers to switch to Coca-Cola's product. Since we earlier rejected the claimed impossibility of complying with such injunctions, Overland's theory of attempted monopolization loses much of its surface appeal.

attempted monopolization, the district court's grant of summary judgment on Overland's antitrust counterclaim and unclean-hands defense was proper.

Even viewing the evidence in the light most favorable to Overland, it is still difficult to escape the conclusion that Overland's antitrust counterclaim and unclean-hands defense were not carefully considered claims, but merely makeweight arguments introduced in a futile attempt to forestall summary judgment. To allow Overland to get to trial on the basis of its unsupported allegations in the hope that some favorable evidence could be developed at trial would be improper. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968).

The district court's grant of summary judgment against Overland on both Coca-Cola's complaint and Overland's antitrust counterclaim is AFFIRMED.